# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

UNITED STATE OF AMERICA,

    Plaintiff,

vs.                                                                         No. 1:14-CR-1542-MV

ISIDOR BENJAMIN ARCHULETA

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Indictment with Prejudice for Violations of Sixth Amendment Speedy Trial Right; the Interstate Agreement on Detainers; and the Speedy Trial Act. [Doc. 19]. The government timely filed a Response, [Doc. 20], and Defendant filed a Reply. [Doc 23]. The Court, having considered the Motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be granted.

## BACKGROUND

On October 31, 2013, Isidor Benjamin Archuleta ("Defendant") was arrested in Farmington, New Mexico and charged with Trafficking a Controlled Substance, Possession of a Firearm by a Felon, Tampering with Evidence, and various motor vehicle offenses ("New Mexico charges"). [Doc. 19 at 1]. On November 20, 2013, a criminal information charging these offenses was filed. [Doc. 19 at 1]. Defendant was in custody from October 31, 2013 until November 26, 2013, when he posted a $30,000 bond and was released. [Doc. 19 at 2].

On January 16, 2014, Defendant was arrested in Phoenix, Arizona and charged with Offering a Forged Instrument ("Arizona charges"). Defendant was incarcerated on these charges for 24 months.

On May 7, 2014, the United States filed an Indictment [Doc. 1] charging Defendant with being a Felon in Possession of a Firearm ("federal charges").

On June 24, 2014, Defendant was temporarily transferred to the San Juan County Adult Detention Center in New Mexico, and a detainer was issued by the Arizona Department of Corrections. [Doc. 23-1 at 2 and 4]. On July 11, 2014, the State of New Mexico filed a *nolle prosequi* and, on July 31, 2014 [Doc. 23-1 at 12], Defendant was returned to the custody of the Arizona Department of Corrections. [Doc. 23-1 at 3].

Defendant was granted parole in Arizona in January 2016 and, through an interstate compact, parole supervision was assumed by the State of New Mexico. [Doc. 19 at 3]. On June 14, 2016, Defendant was arrested on the federal charges, and he was arraigned on June 17, 2016. [Doc. 9].

**DISCUSION**

Defendant argues that dismissal is warranted because the government violated the Interstate Agreement on Detainers, the Speedy Trial Act, and the Sixth Amendment. The government denies these allegations. Because the Court finds a violation of Defendant's Sixth Amendment right to a speedy trial, it need not address Defendant's remaining arguments.

**I.   Sixth Amendment Speedy Trial**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. The remedy for a speedy trial violation is dismissal of the case. *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir.

2014). In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court identified four factors that courts must assess in determining whether the right to a speedy trial has been violated. These factors are (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530. "No one factor is necessary or sufficient to conclude a violation has occurred." *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009). Instead, the court must consider all of the factors together "along with other relevant circumstances." *Id.*

    a. <u>Length of Delay</u>

The first factor of the *Barker* balancing test is the length of delay. 407 U.S. at 530. "The length of delay is a threshold factor. Only if the delay is presumptively prejudicial need we inquire into the remaining *Barker* factors." *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995) (citing *United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994)). The Tenth Circuit has recognized that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.2 (1992)).

The speedy trial right attaches at the earlier of either arrest or indictment, and the length of delay is measured from that point. *Batie*, 433 F.3d at 1290. Mr. Archuleta was indicted on May 7, 2014 and he was not arraigned until June 17, 2016. This two year, one month, and eleven day delay is presumptively prejudicial.[1] Accordingly, the court must then consider, "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652. This is because the "inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. For example, "the delay that can

---

[1] In Mr. Archuleta's initial brief, he erroneously calculated the post-indictment delay to be 18 months. [Doc. 19 at 9].

be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* Additionally, the presumption of prejudice intensifies over time. *Doggett*, 505 U.S. at 652.

Mr. Archuleta is charged in a one count Indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [Doc. 1]. Based on the relative simplicity of this charge and the more than two-year delay between indictment and arraignment, the length of delay factor weighs in Mr. Archuleta's favor.

### b. Reason for Delay

The second *Barker* factor is the reason for the delay. 407 U.S. at 530. In conducting its analysis, the Court must assess the "degree to which the government caused the delay." *Batie*, 433 F.3d at 1291. The government's motive in causing the delay is particularly relevant to this factor. *Id.* A delay that was deliberately caused in an attempt to gain a strategic advantage weighs heavily against the government. On the other hand, delays due to negligence or crowded court dockets weigh less heavily against the government. *Id.*

"Delays attributable to the defendant do not weigh against the government." *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006). For example, the government will not be held accountable for delays resulting from continuances or motions filed the by the defendant. *See, e.g.*, *Batie*, 433 F.3d at 1291 ("continuances and other motions filed by the defendant do not weigh against the government."); *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014) (finding the defendants caused the delay where they filed "multiple continuances with the district court and argued that they would be prejudiced if the court refused to grant them."); *United States v. Larson*, 627 F.3d 1198, 1209-1210 (10th Cir. 2010) (finding the defendant caused the delay where he defendant requested six continuances.).

While the government concedes that the delay in this case exceeds one year, it argues that six months of this delay can be attributed to Defendant. The government argues that the period between Mr. Archuleta's arrest in Arizona in January 2014 and his parole in January 2016 cannot be attributed to the government because "the delay [was] caused by Defendant's incarceration." [Doc. 20 at 3]. Thus, the government asserts that it is only responsible for the approximately six-month period between Defendant's parole in Arizona and his arraignment on the federal charges.

The government contends, without citing to any supporting authority, that the period of Defendant's incarceration must weigh against him. This argument is not supported by the record. Unlike continuances or other motions filed by a defendant, a defendant's incarceration does not inherently delay a case from proceeding. This is evidenced by the facts before the court. Defendant was temporarily transferred from Arizona to New Mexico for the purpose of dropping the New Mexico charges. Emails provided to the Court by Defendant demonstrate that the government actually intended to arraign Defendant on the federal charges while he was in New Mexico in July 2014. [Doc. 23-1 at 9-11]. Although it is not entirely clear from the record why Defendant was ultimately not arraigned at this time, it appears related to scheduling issues between the United States Attorney's Office and the court. [Doc. 23-1 at 10-11].

The record indicates that the Defendant's incarceration in Arizona did not contribute to the delay in his case. Defendant was in New Mexico for more than a month before he was transferred back to Arizona. The government had the ability and intent to arraign him, yet it chose not to before transferring him back to Arizona. Regardless of whether this decision was based on scheduling issues or the government's negligence, it is clear that Defendant was not at fault.

"It is incumbent upon the government to present acceptable reasons for the delay." *Margheim*, 770 F.3d at 1326. The government has provided no explanation as to why Defendant was not arraigned on his federal charges during the more than one month period that he was in New Mexico. Accordingly, this factor weighs against the government.

  c. <u>Assertion of Right</u>

The third *Barker* factor asks whether the defendant asserted his right to a speedy trial. 407 U.S. at 529. The Tenth Circuit has placed strong weight on this factor. *Id.* at 1328. Defendant's obligation "is not satisfied merely by moving to dismiss after the delay has already occurred." *Batie*, 433 F.3d at 1291. "The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Id.* "While a defendant who fails to demand a speedy trial does not inherently waive that right, [the Tenth Circuit has] emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *United States v. Gould*, 672 F.3d 930, 938 (10th Cir. 2012). "Thus, if the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against the defendant." *Id.*

"The third Barker factor weighs against a defendant who weakly asserts his speedy-trial right long after he could have, but the factor weighs in favor of a defendant who early, frequently, and forcefully asserts his right." *United States v. Black*, 830 F.3d 1099, 1120 (10th Cir. 2016). In *Black*, the defendant first asserted his speedy-trial right 16 months into the 23-month delay timeline. *Id.* at 1121. The Tenth Circuit held that an assertion this late into the timeline weighed against the defendant's speedy trial claim. Similarly in *Margheim*, the Tenth Circuit was particularly concerned with "how late [the defendant's] motion to dismiss the

indictment appear[ed] on the pretrial timeline." 770 F.3d at 1328. The court found that this factor weighed against the defendant because his motion to dismiss was not filed until 19 months into the 23-month pretrial timeline. *Id.*

Although, as in *Black* and *Margheim*, Mr. Archuleta did not file the instant motion until nearly two and a half years after he was indicted, unlike in those cases, the government did not inform Mr. Archuleta of these charges for over two years. Mr. Archuleta was indicted on May 7, 2014, but was not informed of the indictment until June 14, 2016. The government argues that the court should ignore this fact, because it is "covered in prongs one and two of the *Barker* test." [Doc. 20 at 4]. This argument belies common sense. It would be logically absurd to require a defendant to assert his right to a speedy trial *before* the defendant was made aware that there were any charges against him. Mr. Archuleta filed the instant motion on November 21, 2016, just five months after he learned of the charges. A five month gap between discovery of the charges and filing a motion to dismiss is not the type of lengthy gap contemplated in *Black* and *Margheim. See, e.g., United States v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010) (finding a Sixth Amendment violation where the defendant waited six months to first assert his speedy trial right).

The amount of time that it takes a defendant to assert his speedy trial right does not end the analysis, however. The third *Barker* factor will weigh against a defendant who "moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case." *Gould,* 672 F.3d at 938. Over the course of the five month period after Mr. Archuleta learned of the charges, he filed two motions to continue. These two continuances, however, hardly demonstrate a lack of desire for a swift resolution of his case.

In *United States v. Toombs*, for instance, the defendant requested seven continuances over the course of 17 months before finally asserting his speedy trial right. 574 F.3d 1262, 1274-75 (10th Cir. 2009). Under these facts, the Tenth Circuit found that the third factor weighed heavily against him. *Id.* at 1274. In *Batie*, the defendant's first trial ended in a mistrial. He moved to dismiss the indictment on the basis of double jeopardy and, after that motion was denied, requested two continuances before ultimately filing a second motion to dismiss on speedy trial grounds. 433 F.3d at 1289-90. The Tenth Circuit noted that these continuances occupied nearly half of the delay of which Mr. Batie complained. *Id.* at 1292-93.

Mr. Archuleta's continuances were not attempts to avoid trial altogether, nor is there any evidence Mr. Archuleta "was interested in other time-consuming strategies for a significant portion of the delay period." *Margheim*, 770 F.3d at 1329. Unlike *Toombs*, where the defendant requested seven continuances, Mr. Archuleta only requested two. Additionally, while the defendant in *Batie* also only requested two continuances, he asserted his speedy trial right after his earlier motion to dismiss was unsuccessful. 433 F.3d at 1289-90. Unlike in *Batie*, Mr. Archuleta did not file any other substantive dispositive motions prior to his motion to dismiss on speedy trial grounds. This supports the conclusion that Mr. Archuleta's primary goal was to pursue a "swift resolution of his case." *Gould*, 672 F.3d at 938.

The two continuances are particularly excusable given the unusual facts of this case. While Mr. Archuleta's interest in obtaining a speedy trial had been accruing over the course of two years, his defense counsel was not appointed until shortly after Mr. Archuleta's arrest in July 2016. The first motion to continue was filed less than a month after the initial discovery materials were provided [Doc. 14], and by the time the second motion had been filed, defense counsel had apparently identified potential dispositive issues, but had not yet obtained necessary

inmate records. [Doc. 17]. Typically, defense counsel is retained shortly after a defendant is indicted, and a speedy trial motion would not be contemplated just five months later. In this case, however, because defense counsel was appointed so late in the pretrial timeline, he was placed in the unusual situation of having to simultaneously apprise himself of the facts of the case while pursuing a speedy trial motion far earlier than is typical.

In sum, Mr. Archuleta asserted his Sixth Amendment right just five months after learning of the charges against him. During that time, he requested two continuances, which is excusable considering that defense counsel was appointed more than two years after Mr. Archuleta was indicted. Accordingly, this factor weights in Mr. Archuleta's favor.

    d. Prejudice

The fourth *Barker* factor is prejudice. *Barker*, 407 U.S. at 529. "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *Toombs*, 574 F.3d at 1275. Prejudice is assessed "in light of the interest that the speedy trial right was designed to protect." *Seltzer*, 595 F.3d at 1179. These interests include: "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired." *Id.* at 1179-80 (citing *Barker*, 407 U.S. at 532). "The most important of these interests is the impairment or hindrance of the defense." *Toombs*, 574 F.3d at 1275. "Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor." *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004).

In *Seltzer*, the defendant was indicted on federal charges while he was serving a sentence on unrelated drug charges. 595 F.3d at 1174. The government decided not to proceed with Mr. Seltzer's case until after his proceedings on the unrelated charges were completed. *Id.* The

resulting delay was approximately two years. *Id* at 1176. The Tenth Circuit held that the defendant was prejudiced in three ways: (1) the delay added to the defendant's pretrial incarceration; (2) the defendant was denied access to the assistance of counsel for over six months; and (3) the defendant was "deprived . . . of a chance to invoke his statutory rights under the Speedy Trial Act at an earlier date." *Id.* at 1180.

Of the three examples of prejudice found in *Seltzer*, two are present in the instant case and both are more severe. Defendant was indicted on May 7, 2014, but was not made aware of these charges until June 2016. Defendant lacked the assistance of counsel for more than two years. As a result, Defendant was deprived of the opportunity to invoke his rights under the Speedy Trial Act and the Interstate Agreement on Detainers, both of which contain notice provisions that allow a defendant to demand a speedy trial. *See* 18 U.S.C. App. 2 § 2 art. III(a); 18 U.S.C. § 3161(j). Because Defendant was neither represented by counsel nor notified of the indictment prior to his arrest in June 2016, Defendant was precluded from invoking his rights under either of these statutes. Under *Seltzer*, these deprivations are sufficient to constitute prejudice. 595 F.3d at 1181.

Thus, this factor weights in favor of Mr. Archuleta.

   e. Balancing

Each of the four *Barker* factors weights in favor of Mr. Archuleta. The two year, one month, and eleven day delay in this case is presumptively prejudicial, and is especially concerning given the relative simplicity of the charges against Mr. Archuleta. The government's negligence caused the delay. Mr. Archuleta was indicted in May 2014, but the government failed to inform Mr. Archuleta of these charges until July 2016. Mr. Archuleta asserted his Sixth Amendment right just five months after learning of these charges. While he did request two continuances, they do not reflect a desire to avoid trial or attempt to pursue other strategic

avenues. Finally, Mr. Archuleta was prejudiced by the two year deprivation of counsel, which ultimately precluded him from exercising his rights under both the Speedy Trial Act and the Interstate Agreement on Detainers.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Defendant Isidor Archuleta has demonstrated a violation of his Sixth Amendment right to a speedy trial. The remedy for a speedy trial violation is dismissal of the case. *Margheim*, 770 F.3d at 1325. Accordingly, Indictment No. 14-CR-1542-MV, charging Mr. Archuleta with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 992(g)(1) and 924(a)(2) must be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss is GRANTED.

DATED this 16th day of June, 2017.

_____
MARTHA VAZQUEZ
United States District Judge

Daniel J Tallon                    Paul Mysliwiec
Attorney at Law                    United States Attorney's Office
*Attorney for Defendant*           *Attorney for Plaintiff*